UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
PREMIUM SPORTS INC., as Assignee of
SETANTA (ILR), LTD, as Broadcast
Licensee of the April 1, 2009, Ecuador/
Paraguay Soccer Broadcast,

          Plaintiff,                             10 CV 3151 (DLI) (ALC)

     v.                                     REPORT AND
                                                   RECOMMENDATION

FELIPE E. MEZARINA a/k/a FELIPE
SAARENAS, Individually, and as officer,
Shareholder, and/or principal of F.G.
RESTAURANT CHIFA PERUANO, and
F.G. RESTAURANT LATINO, CORP.,
d/b/a LA NUEVA CHIFA RESTAURANT
a/k/a RESTAURANT CHIFA PERUANO,

          Defendants.
-------------------------------------------------X

**CARTER, United States Magistrate Judge:**

       The above-referenced action was referred to the undersigned for a Report and Recommendation on Plaintiff's motion for default judgment against F.G. Restaurant Latino, Corp, d/b/a La Nueva Chifa Restaurant a/k/a Restaurant Chifa Peruano ("Defendant").[1] Based on plaintiff's submissions, and for the reasons stated below, I recommend granting the motion as to liability, and awarding Plaintiff $5,588.50 in statutory damages, attorneys' fees and costs.

BACKGROUND

       As alleged in the complaint ("Complaint"), plaintiff Premium Sports, Inc. ("Plaintiff" or "Premium Sports"), as Assignee of Setanta Sport (ILR) LTD., as broadcast licensee of the April

---

[1] Per September 29, 2010 Stipulation defendant Felipe Mezarina was dismissed from this action. (Docket No. 5.)

1

1, 2009, Ecuador/Paraguay Soccer Broadcast is a corporation organized and existing under the laws of the State of California. By contract, Plaintiff was granted the right to distribute the transmission of the April 1, 2009 soccer match between Ecuador and Paraguay (the "Match"). Plaintiff then entered into agreements with other entities which could broadcast the Match when transmitted through "cable systems, satellite companies, and internet broadband via satellite signal." (Complaint ¶¶ 15-16.) As a result, those wishing to watch the Match had to enter into agreements with Plaintiff in order to de-scramble the encrypted satellite signal.

Defendant is a New York corporation operating a business at 91-18 Corona Avenue, Flushing, New York. Defendant did not enter into a contract to broadcast the Match but, according to Plaintiff's investigator who visited the site on the day of the Match, Defendant nevertheless broadcasted it at its place of business, which at the time was occupied by approximately five people. When the investigator was present, Defendant did not impose a cover charge for patrons. Plaintiff demands $110,000 in statutory damages pursuant to 47 U.S.C. § 605(a) ("Section 605") in addition to costs and attorneys' fees.

Defendant was properly served with the Complaint but failed to answer or otherwise respond. On October 8, 2010, the Clerk of the Court noted Defendant's default and Plaintiff moved for default judgment.

## DISCUSSION

I. *Liability*

On a motion for default judgment, the Court takes the well-pleaded allegations of the Complaint as true. Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Cablevision Sys. of New York City Corp. v. Torres, No. 02 CV 7602 (AJP), 2003

WL 22078938, at *3 (S.D.N.Y. Sept. 9, 2003). "The court is to exercise sound judicial discretion" in determining whether the entry of default judgment is appropriate. Baidan v. Brandaid Comm. Corp., No. 03 CV 2424 (DC), 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004). In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim." Telequip Corp. v. Change Exch., No. 01 CV 1748 (FJS)(GJD), 2004 WL 1739545, at *1 (N.D.N.Y. 2004). Here, the facts asserted in the Complaint establish that Premium Sports was licensed to contract with other entities for the purpose of broadcasting the Match; that Defendant was not among those who contracted to legally broadcast it; that the only way to otherwise broadcast the Match would be via illegal interception; and that the Match was shown in Defendant's business establishment to at least five people. These allegations are sufficient to establish Defendant's liability for violating Section 605.

II.  *Damages*

In evaluating a motion for default judgment pursuant to Federal Rule of Civil Procedure 55, the Court must accept as true the well-pleaded allegations in the complaint. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-5 (2d Cir. 1999). The same is not true with respect to damages. "[T]he district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." House v. Kent Worldwide Machine Works, Inc., No. 09 CV 146, 2010 WL 10020, at * 1 (2d Cir. Jan. 4, 2010). "The quantum of damages [is] to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). In this case, damages can be somewhat easily ascertained, since the

Cable Communications Policy Act provides courts with guidelines. See 47 U.S.C. §§ 605(e)(3)(C)(i)(II)-(ii).

A. *Statutory Damages*

"The unauthorized reception of any radio or cable communication services, which originate and are delivered by satellite or any other means" violates Section 605. Here, Plaintiff seeks the maximum allowable statutory damages under Sections 605 (e)(3)(C)(i)(II) and (ii).

Sections 605 (e)(3)(C)(i)(II) and (ii) provide, in relevant part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]
>
> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

"The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the Court." Time Warner Cable of New York City v. Sanchez, No. 02 CV 5855 (GBD) (FM), 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). In this regard, Time Warner is instructive. There, plaintiff retained the services of a private investigation firm to find out whether defendant, a restaurant owner, was broadcasting a pay-per-view boxing match from the restaurant. Id. at *2. The investigators confirmed that the match was being displayed before 32 patrons. Id. at *1. Acknowledging that the statute does not provide further guidance, the court looked to the fact that Time Warner did not provide evidence of an amount charged by defendant for entry into the establishment during the broadcast and concluded that there may not have been any surcharge imposed on patrons. The court fashioned an award of $20 per patron. Id. at *3-4;

see also Entertainment by J&J, Inc. v. Friends II, Inc., No. 02 CV585 (JES) (RLE), 2003 WL 1990414, at *3 (S.D.N.Y. Apr. 25, 2003) (awarding $20 per patron where plaintiff offered evidence of number of patrons); Entertainment by J&J, Inc. v. Nina's Rest. and Catering, No. 01 CV 5483 (KMW) (RLE), 2002 WL 1000286, at *3-4 (S.D.N.Y. May 9, 2002) (same).

Here, Plaintiff has claims that its investigator observed "approximately 5 individuals in an establishment with an unknown capacity." (Kim Aff. ¶ 8.) Moreover, the investigator did not pay a cover charge to enter the establishment and Plaintiff has not indicated how much it would have cost Defendant to legally broadcast the Match. (Kim. Aff. Ex. B.) Under these circumstances, I am inclined to follow the courts awarding $20 per patron. However, because the per-patron calculation falls short of the statutory minimum of $1,000, I recommend statutory damages of $1,000 pursuant to Section 605 (e)(3)(C)(i)(II).

B. *Enhanced Damages*

Plaintiff herein also requests enhanced damages under Section 605(e)(3)(C)(ii). If the court finds that the statute was violated "willfully and for the purpose of commercial gain," it may award up to an additional $100,000. 47 U.S.C. 605(e)(3)(C)(ii). The Time Warner court concluded that "in order for [the restaurant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the transmission." Time Warner, 2003 WL 21744089, at *4 (awarding $5,000 in enhanced damages); see also Garden City Boxing Club, Inc. v. Extasis Corp., No. 07 CV 3853 (NGG) (CLP), 2008 WL 3049905, at *8 (E.D.N.Y. Aug. 1, 2008) (awarding $10,000 in enhanced damages because of the "commercial gain that was likely experienced through increased food and drink sales"); Garden City Boxing Club, Inc. v.

5

Huesca, No. 05 CV 3698 (NGG) (MDG), 2007 WL 5253982, at *5-6 (E.D.N.Y. Dec. 4, 2007) ("Defendants who intercept signals and broadcast programming without authorization in place of business where certain events are shown to the public are generally held to have acted willfully and for purposes of commercial advantage.") Here, Plaintiff alleges that there is no way Defendant could have viewed the Match without utilizing descrambling equipment, and thus, enhanced damages are warranted. While this is true, the investigator observed only five patrons and did not pay to enter. Accordingly, while there is evidence that the interception was intentional, I find it appropriate in this case to award only modest enhanced damages, in the amount of $3,000. See, e.g., J&J Sports Prods. Inc. v. Castrillion, No. 07CV 2946 (FB) (VVP), 2009 WL 1033364, at *4 (E.D.N.Y. Apr. 16, 2009) (treble damages appropriate as a deterrent against future violations).

III.  *Attorneys' Fees*

In this Circuit, a party seeking attorneys' fees is required to submit records of a type that enable the court to determine whether the fee is reasonable. See generally New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983); see also Central New York Laborers' Health and Welfare, Pensions, Annuity and Training Funds v. Five Star Constr. Servs., Inc., No. 09 CV 509 (GTS) (GJD), 2010 WL 2545151 *3 (N.D.N.Y. Jun. 18, 2010). Specifically, "[a] party seeking an award of attorneys' fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." Sheet Metal Workers Nat'l Pension Fund v. Skye

Sheet Metal, No. 08 CV 1315 (DRH) (AKT), 2010 WL 3119783, at *9 (E.D.N.Y. Jun. 22, 2010).

In this case, Plaintiff's counsel has submitted a sufficiently detailed Affidavit of attorneys' fees, representing 4.83 attorney hours charged at $200 per hour, and 1.5 paralegal hours, charged at $75 per hour, for a total of $1,078.50. Additionally, Plaintiff seeks to recover the filing fee of $350.00, and a service of process fee of $160.00, for a total of $1,588.50. Similar awards have been routinely awarded in other cases involving default judgments, and in other such cases involving the same counsel. See, e.g., J&J Sports Prods. v. Meyers, No. 06 CV 5431 (BSJ) (JCF), 2007 WL 2030288 at *5 (S.D.N.Y. July 16, 2007) (awarding $1,351.75 in default judgment action brought pursuant to Section 605 where counsel charged $200 per hour); Joe Hand Promotions, Inc. v. Phillips, No. 06 CV 3624 (BSJ) (JCF), 2007 WL 2030285, at *6 (S.D.N.Y. July 16, 2007) (awarding $1,525.00 in fees and costs in default judgment action where counsel charged $200 per attorney hour and $75 per paralegal hour). Therefore, I recommend granting Plaintiff $1,588.50 in fees and costs

## CONCLUSION

For the foregoing reasons, I recommend granting Plaintiff's motion insofar as it seeks statutory damages, in the amount of $1,000, enhanced damages of $3,000, and $1,588.50 in attorneys' fees and costs, for a total of $5,588.50.

Plaintiff is instructed to deliver a copy of the within to Defendant via first-class mail. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation. Such objections shall be filed on ECF. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered. SO ORDERED.

DATED: May 20, 2010  _____/s/_____
  Brooklyn, New York  Andrew L. Carter, U.S.M.J.